Jesse Kodadek
William T. Casey
PARSONS BEHLE & LATIMER
127 East Main Street, Suite 301
Missoula, MT 59802
406.317.7220
jkodadek@parsonsbehle.com
wcasey@parsonsbehle.com

*Attorneys for the Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| HUGH SUTHERLAND and KIM D. SUTHERLAND, <br><br> *Plaintiffs*, <br><br> v. <br><br> PAUL J. WATTERWORTH, as TRUSTEE OF THE PAUL J. WATTERWORTH REVOCABLE TRUST, <br><br> *Defendant*. | **REPLY BRIEF IN SUPPORT OF MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS** |

There are three fundamental problems with Watterworth's argument.

First, the 2002 warranty deed from Sagebrush to Knight/Reiber did not convey anything at the time it was executed, because the whole point of a warranty deed associated with an executory purchase agreement is that the warranty deed will be held in escrow until such time as the terms of the contract are satisfied. This

REPLY BRIEF IN SUPPORT OF MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS—PAGE 1

is clear from the plain language of the Sagebrush to Knight/Reiber NPI, which says that "upon payment in full of the purchase price, Seller is required to deliver the appropriate Deed to Buyers." Therefore, the warranty deed could not have conveyed anything until five years later, when it was delivered and recorded.

Second, contrary to Watterworth's assertions, the NPI is not an abstract of the warranty deed. It is an abstract of the contract for deed, and its offer to "provide a copy of said agreement without cost upon request" is directed at the executory "written agreement for sale" of the property, not the warranty deed. Thus, the NPI is the exact sort of instrument that the Montana Supreme Court in *Towsley* held cannot "convey" anything.

Third, despite Watterworth's apparent claim that the easement-by-reference doctrine does not require the benefitted parcels to be shown on the certificate of survey referenced in the deed to the buyer, Watterworth himself cites *Blazer* for the rule that an "easement referenced on a certificate of survey *does not benefit a property not shown on a certificate of survey*." (Doc. 15 at 26. (emphasis added)). Watterworth's quote is generally correct, but *Blazer* went even further and held that to reserve an easement by depicting it on a certificate of survey referenced in the deed, "an individual looking at *that* plat or certificate of survey must be able to ascertain, with reasonable certainty, the depicted easement's use or necessity and the intended dominant and servient tenements." *Blazer v. Wall*, 183 P.3d 84, 106,

¶ 75[1] (Mont. 2008) (emphasis added). And since *Blazer*, the Montana Supreme Court has repeatedly held that extrinsic evidence may not be used to supply a property description of the dominant tenement when it cannot be ascertained from the transaction documents. Thus, Watterworth's own arguments—that the purposes of the easement can be discerned by looking at certificates of survey that were not part of the Sagebrush to Holt conveyance—show that his easement-by-reference claims fail as a matter of law.

## Argument

Watterworth's entire theory blends disparate issues of property law into a sort of smoothie which asks the Court to ignore the fundamental principles and purposes of Montana's recording statutes and the purpose of constructive notice. The smoothie's main ingredient is the incoherent strawman that the Sagebrush to Reiber-Knight [Warranty] Deed was "of record" when the Sutherlands purchased their property in 2021. (Doc. 15 at 7.) That may be true, but it is irrelevant when the Sagebrush/Reiber-Knight warranty deed was not recorded until 2007, long after Sagebrush had already conveyed away what is now the Sutherlands' property to a third party in 2002. As will be shown below, this strawman leads Watterworth to a series of conclusions that are incorrect as a matter of clearly established Montana

---

[1] *Blazer* is a long and dense opinion, and Sutherland will include citations to the specific paragraphs in that opinion for ease of reference.

law.

As a threshold matter, despite including a flurry of irrelevant dates and times, Watterworth largely skips over this timing problem. By the time the Sagebrush to Knight/Reiber warranty deed was recorded in 2007, Sagebrush had conveyed what is now the Sutherlands' property to the Holts. Indeed, Sagebrush conveyed the Sutherlands parcel to the Holts, using the identical legal description that still exists, just four months after the Sagebrush to Reiber/Knight NPI was recorded in 2002. It hardly requires stating, but a party cannot grant an easement over property it does not own. That means that, by the time the Reiber/Knight warranty deed was recorded in 2007, that deed could not have created any easement rights in favor of Reiber/Knight over what is now the Sutherlands' property.

Thus, the pleadings establish that there are two—and only two—transactions relevant to Watterworth's easement claims: the Sagebrush to Reiber/Knight NPI recorded in 2002, or the Sagebrush to Holt deed recorded four months later, in October of 2002. If the claimed easement was not created via either of those transactions, the easements do not exist, and nothing that happened in 2007 is relevant to Watterworth's claimed easement across the Sutherlands' property.

**I.    The 2002 Sagebrush to Knight/Reiber NPI did not convey anything and the warranty deed was not recorded until 2007.**

Watterworth's argument apparently starts from the premise that the 2002

Sagebrush to Knight/Reiber warranty deed conveyed title to Knight/Reiber in 2002, and that the 2002 NPI was an abstract of the warranty deed. (Doc. 15 at 11.) Both statements are wrong.

First, the "notice" provided by the Notice of Purchasers' Interest is to the contract for deed, not to the warranty deed. The NPI states that Sagebrush had "entered into a written contract for sale to [Knight/Reiber] of the following described real property," which then refers to the NPI's Exhibit A, and then explains that the "agreement requires periodic payments to be made to [Sagebrush] in amortization of the balance due on the purchase price, and upon payment in full of the purchase price, [Sagebrush] is required to deliver the appropriate deed to [Reiber/Knight]." (Doc. 1-5.). In other words, while the warranty deed was executed in 2002, it did not convey title at that time—it was simply held in escrow and would be "delivered" only if Reiber/Knight satisfied the terms of the "written agreement for sale" they had with Sagebrush.

Watterworth's theory that that the warranty deed "did not provide that the property was being later conveyed" (Doc. 15 at 12) is not incorrect, but it is entirely misleading. The is good reason the warranty deed says nothing about a future conveyance—because the warranty deed would *eventually* convey title, but it would only be effective on delivery to Knight/Reiber, and it would only be delivered if the conditions of the contract for deed were satisfied. Thus, as the NPI

suggests, the contract for deed itself provided that the warranty deed would be "later conveyed," because per the terms of the contract for deed, Sagebrush would only "deliver" the warranty deed "upon payment in full" of the purchase price.

This is not some unique situation—it is how all contracts for deed work. And it is exactly how the contract for deed in *Towsley* worked, too. As *Towsley* explained, there is a general distinction between a warranty deed, "which immediately transfers a property interest, and an executory contract for sale and purchase of property, which states conditions precedent to a transfer of property." *Towsley v. Stanzak*, 519 P.3d 817, 824 (Mont. 2022). A contract for deed is, by definition, an executory contract. *Id.*

*Towsley* addressed an NPI that cannot be distinguished from the one here, and the Montana Supreme Court addressed two related issues: "whether the [NPI] contains the requisite language to itself constitute an instrument of conveyance" or, alternatively, whether "the NPI constitutes an *abstract* of an instrument of conveyance." *Towsley*, 519 P.3d at 823–24. The court concluded the NPI failed to convey an easement under either principle. *Id.*

This conclusion did not turn on the description of the property that *might* be conveyed in the future—like Exhibit A in the NPI here—because the Court held that "even if individual words used in the property description were read as consistent with language of conveyance, it is clear from the four corners of the

document that reference was being made to a future conveyance of that interest, and was not effectuated by the NPI itself." *Id.* Thus, the language in "Exhibit A" to the Sagebrush to Reiber/Knight NPI does not help Watterworth, and just like in *Towsley*, even if those words were "read as consistent with language of conveyance," the NPI was referring to a future, rather than a present, conveyance. *Id.*

Recognizing that an NPI cannot constitute a conveyance of property sufficient to create an easement, Watterworth argues that under the doctrine of merger, Reiber/Knight's "rights are found in the Sagebrush/Reiber-Knight deed." (Doc. 15 at 20.) But then Watterworth's argument goes astray, because he claims that the NPI is an abstract of the warranty deed itself. (Doc. 15 at 21.)

Again, however, is not what the NPI says. Instead, the NPI discusses the "agreement" between the parties, which is that if the conditions of that agreement are satisfied, Sagebrush will deliver a copy of the deed to the buyer. The NPI then states that the Reiber/Knight would "provide a full and complete copy of said agreement" upon request. (Doc. 1-1.) The "said agreement" the NPI refers to is the contract for deed rather than the warranty deed, because Reiber/Knight did not have a copy of that deed—instead, Sagebrush, or its escrow agent, retained the warranty deed and was only required to "deliver" it if Reiber/Knight satisfied the terms of the contract for deed. Thus, Watterworth's claim that the NPI is an

abstract of the warranty deed is belied by the plain language of the NPI itself. Instead, just like in *Towsley*, the NPI here is an abstract of the contract for deed, which included a contingent promise to deliver the warranty deed in the future upon the satisfaction of certain conditions. And just like the NPI in *Towsley*, the NPI—and the contract for deed to which it refers—was incapable of creating an easement because it did not convey anything at that time. And it was incapable of doing anything at all with regards to the Sutherlands' parcel when it was eventually conveyed, because Sagebrush had long since sold that property to Holt.

## II. An easement-by-reference cannot be created when the identity of the dominant and servient parcels requires looking beyond the face of the survey referenced in the deed.

Watterworth's easement-by-reference argument proceeds in two parts. First, he points out that COS 498388-R—where the Sutherlands' parcel is legally described—includes references "on its face" to COS 496440-R and 484308-R, where Watterworth's properties are legally described. Second, he argues that those certificates of survey, in turn, "more than adequately described the benefitted and burdened parcel." Putting all those surveys together, he argues that the easement-by-reference doctrine is satisfied. (Doc. 15 at 28, 31.)

But Watterworth is wrong, and Watterworth's recognition that someone would need to look beyond the Sagebrush to Holt deed and COS 498388-R, to which the deed references, is the exact type of extrinsic evidence that the Montana

Supreme Court will not allow to provide "context" in support of an easement allegedly created by reference. Indeed, Watterworth's easement-by-reference claim is foreclosed by *Blazer*, which is more-or-less identical to this case, and which therefore merits additional discussion.

In *Blazer*, the parties disputed the existence and effect of an easement depicted on COS 4446, which legally described seven tracts, as shown here in the opinion:



Davis, one of the parties who created the subdivision, sold Tract 1, and the warranty deed described the property as Tract 1 of COS 4446, "SUBJECT TO 30 foot road easement as shown on Certificate of Survey No. 4446, records of Flathead County, Montana." *Blazer*, ¶¶ 4-7. Davis later sold Tract 4 to the Blazers, along with additional properties to the south and west of Tract 4, which are not depicted on COS 4446, but which are contiguous with Tract 4. *Blazer*, ¶¶ 8–9. The

Blazers then asserted that, by virtue of the 30-foot easement shown on the COS, he had an easement across Tract 1, which he could use to access his Tract 4 along with their off-survey property to the southwest. *Blazer,* ¶ 13. The owners of Tract 1 disagreed on all fronts.

The Montana Supreme Court addressed three distinct issues. First, it held that the "subject to" language in the deed did not create or reserve any easement rights to Davis or his successors in interest, because "subject to" language in a deed is never enough, on its own, to reserve an easement. *Blazer,* ¶¶ 28–29.

The Court then moved on to the easement-by-reference issue, where it first addressed Blazers' claim that the easement shown on COS 4446 provided access to their off-survey property. The Court undertook an exhaustive analysis of cases that had "recognized the creation of an easement where the deed explicitly referred to a recorded plat or certificate of survey on which the subject easement was adequately described." *Blazer,* ¶ 40. It first noted that an "express depiction of an easement" on a certificate of survey is not enough, and that instead, the easement itself must arise "expressly, not by implication." *Blazer,* ¶¶ 40–41. Applying these principals, the Court easily concluded that the easement could not benefit any off-survey property, because it is "axiomatic" that an easement has not been "adequately described" when the identity of the dominant tenement cannot be ascertained from the documents of conveyance. *Blazer*, ¶ 51. Thus, under the

easement-by-reference doctrine, an off-survey property cannot be a dominant tenement. *Blazer*, ¶ 54.

Finally, the Court addressed whether the Blazers had an easement over Tract 1 for the benefit of Tract 4, both of which are obviously "on-survey." The question there focused on whether the easement was "adequately described," and the owners of Tract 1 argued that because the easement crossed both Tract 1 and Tract 4 before leaving the survey, "it is not clear what was intended, what land was to be benefited, and what purpose was to be served" by the easement. *Blazer*, ¶ 54. The Supreme Court agreed. *Blazer*, ¶ 54. It recognized that someone examining COS 4446 cannot know whether the easement was being granted or reserved and theorized that the easement could have served any number of purposes, with any number of potentially dominant parcels. *Blazer*, ¶ 57. Thus, because it was not "ascertainable with reasonable certainty" from the face of the COS what the road's "use and necessity" might be, or which parcels were the dominant or servient tenements, the COS "necessarily" failed to establish an easement for the benefit of Tract 4, even though it was shown on the same COS as Tract 1. *Blazer*, ¶ 57.

*Blazer* is not a one-off. In cases before and after it, the law has been clear that an easement is not adequately described if a determination of the benefitted and burdened parcels and the easement's use and necessity requires looking to extrinsic or parol evidence. *See, e.g., Bos Terra, LP v. Beers*, 354 P.3d 572, 577

(Mont. 2015) ("extrinsic evidence may not be used to supply a property description of the dominant tenement when it has been omitted or cannot be ascertained from the transaction documents"); *Mary Ellen Duke Trust v. Lee Lou, LLC*, 535 P.3d 1133, 1137 (Mont. 2023) (finding no easement when it was "unclear from [the COS] alone which are the intended dominant and servient estates").[2]

Ultimately, the easement-by-reference dispute in this case cannot be distinguished from *Blazer*, and the same problems that doomed Blazer's claim that it had easement over Tract 1 for the benefit of Tract 4 doom Watterworth's claim here. Again, none of Watterworth's parcels are legally described on COS 498388-R—which is the only COS mentioned in the Sagebrush to Holt deed. Watterworth's insistence that the problem can be remedied because 498388-R includes references to other certificates of survey where his properties are legally described cannot help him. Instead, that argument fatally undermines his claim, because it acknowledges that a party would be required to investigate and consider the overall "context" of whatever Sagebrush was attempting to accomplish during

---

[2] Watterworth makes an odd argument that the Sutherlands' reference to the COS in *Yorlum* is off-base, and claims that the "survey [in *Yorlum*] has no legal description nor shows the entirety of any parcel." (Doc. 15 at 28.) But Watterworth then goes on to show a portion of the COS from *Yorlum*, which clearly depicts two parcels, Lot 5-A-1 and Lot 5-B, with an easement running from the end of a cul-de-sac, across Lot 5-A-1, and terminating at the boundary of Lot 5-B. The Montana Supreme Court found that the easement's "burden" on Lot 5-A-1 is "reasonably clear to any purchaser of Lot 5-A-1." *Yorlum Properties Ltd. v. Lincoln Cnty.*, 311 P.3d 748, 755 (Mont. 2013).

a brief period of time in 2002.

At bottom, under the easement-by-reference doctrine, there is only one relevant COS in this case—498388-R—and a review of that COS alone shows that is not clear what the use and necessity of the depicted easement might be, or who it is for. Notably, the only "on-survey" parcel it crosses is the one now owned by the Sutherlands. It then crosses over the smallest corner of Watterworth's property—but one could only know that it was owned by Watterworth by looking to extrinsic evidence. And even if someone were to look at the other certificates of survey, it still appears more likely that Watterworth's parcel is a servient tenement, rather than a dominant tenement. Either way, after crossing the corner of Watterworth's parcel, the easement on COS 498388-R enters a different parcel—again identifiable only by referring to a different COS—before exiting the COS and venturing into Missoula County. At that point, even if someone did far more than the law requires and looked to see what that off-survey property in Missoula County is, they would find that it is owned by the State of Montana.

So, even a close inspection of COS 498388-R would not reveal anything about the purpose of the alleged easement as it crosses the Sutherlands' property. It could just as easily be an easement for the Sutherlands to reach the State-owned property in Missoula County, or it could be an easement for the benefit of the State. One could speculate all day, but it doesn't matter, because it is impossible to

tell what the easement's use or necessity is, or what the dominant and servient tenements are, and the easement is therefore not adequately described as required by *Blazer* and every other Montana case that has addressed this precise issue.

At the end of the day, *Blazer* supplies three straightforward rules that foreclose Watterworth's easement-by-reference claim here. First, when Sagebrush sold what is now the Sutherlands' parcel to the Holts, the deed language that the property was "subject to" an easement as shown on COS 498388-R could not, without more, establish an easement. Second, because Watterworth's Missoula County property is entirely "off-survey," it is a categorical rule that the Missoula County property was not "adequately described" for the purposes of the easement-by-reference doctrine. And finally, Watterworth's Ravalli County properties are not legally depicted on COS 498388-R, and it is impossible to tell from looking at the COS what property was intended to be the dominant tenement without looking to extrinsic evidence. For these reasons, Watterworth cannot have an easement over the Sutherlands property that was created by reference to COS 498388-R.

## Conclusion

The Sutherlands are entitled to a declaratory judgment that the pleadings establish that Watterworth does not have an express easement over their property.

March 18, 2024.

PARSONS BEHLE & LATIMER
*Attorneys for the Sutherlands*


/s/ Jesse Kodadek
Jesse Kodadek

## Certificates of Compliance and Service

Pursuant to Local Rule 7.1(d)(2)(E), I certify that this brief has 3210 words as calculated by Microsoft Word, excluding the caption, certificate of compliance, and certificate of service.

I further certify that all parties entitled to service of this document are registered with the Court's CM/ECF system and will be served upon filing.

/s/ Jesse Kodadek