Jesse Kodadek
William T. Casey
PARSONS BEHLE & LATIMER
127 East Main Street, Suite 301
Missoula, MT 59802
406.317.7220
jkodadek@parsonsbehle.com
wcasey@parsonsbehle.com

*Attorneys for the Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| HUGH SUTHERLAND and KIM D. SUTHERLAND,<br><br>   *Plaintiffs*,<br><br>   *v.*<br><br>PAUL J. WATTERWORTH, as TRUSTEE OF THE PAUL J. WATTERWORTH REVOCABLE TRUST,<br><br>   *Defendant*. | **PLAINTIFFS' RESPONSE TO WATTERWORTH'S MOTION FOR PARTIAL SUMMARY JUDGMENT (DOC. 16.)** |

# Table of Contents

Introduction ..................................................................................................6

Relevant Facts ..............................................................................................7

    A.  In April 2002 Sagebrush entered into a contract for deed with Reiber/Knight, the parties recorded the NPI to reflect that contract, and then placed the executed warranty deed in escrow. ....................................9

    B.  In August of 2002, Sagebrush quitclaims what is now the Sutherland property to the Holts, and that deed is recorded in October of 2002. .........10

    C.  The Reiber/Knight warranty deed is not recorded until 2007, long after Sagebrush had lost the ability to grant an easement over what is now the Sutherlands' property. ..............................................................................10

Argument....................................................................................................11

  I.  The Reiber/Knight NPI was incapable of granting an easement because it was not a conveyance, and the associated warranty deed was incapable of granting an easement because it was not effective until after Sagebrush had lost the ability to grant an easement over what is now the Sutherlands' property.........................................................................................11

    A.  Watterworth's argument that the NPI created the easement is foreclosed by the plain language of the NPI and by *Towsley* because the NPI contains no language of conveyance........................................................12

    B.  The warranty deed did nothing in 2002 because the NPI explains that it would be held in escrow and not delivered until the conditions of the contract were satisfied, which the evidence suggests did not happen until 2007. ........................................................................................................15

    C.  By the time the warranty deed conveyed the property to Reiber/Knight, Sagebrush had long since conveyed away what is now the Sutherlands' property and therefore Sagebrush had no ability to grant an easement over the Sutherlands' property. ................................................................18

  II.  The quitclaim deed from Sagebrush to the Holts does not satisfy the easement-by-reference doctrine because the identities of the dominant parcels and the easement's use and necessity are not adequately described on the referenced COS 498388-R....................................................20

III. "Subject to" language in a deed is *never* sufficient to create an easement. ....25

Conclusion .................................................................................................26

Certificates of Compliance and Service................................................27

# Table of Authorities

## *Cases*

*Airlines for Am. v. City & Cnty. of San Francisco*,
   78 F.4th 1146 (9th Cir. 2023) .................................................................18

*Ash v. Merlette*,
   407 P.3d 304 (Mont. 2017) ....................................................................22

*Blazer v. Wall*,
   183 P.3d 84 (Mont. 2008) ..................................... 19, 20, 21, 24, 25, 26

*Bos Terra, LP v. Beers*,
   354 P.3d 572 (Mont. 2015) .......................................................... 21, 22

*Carnahan v. Gupton*,
   96 P.2d 513 (Mont. 1939) ....................................................................16

*Davis v. Hall*,
   280 P.3d 261 (Mont. 2012) ..................................................................24

*Earl v. Pavex, Corp.*,
   313 P.3d 154 (Mont. 2013) ..................................................................19

*Hart v. Barron*,
   204 P.2d 797 (Mont. 1949) ..................................................................16

*John Alexander Ethen Trust v. River Res. Outfitters*,
   256 P.3d 913 (Mont. 2011) ..................................................................22

*Leichtfuss v. Dabney*,
   122 P.3d 1220 (Mont. 2005) ................................................................18

*Romain v. Earl Schwartz Co.*,
   779 P.2d 54 (Mont. 1989) ....................................................................17

*Silfvast v. Asplund*,
   20 P.2d 631 (Mont. 1933) ....................................................................16

*Towsley v. Stanzak*,
    519 P.3d 817 (Mont. 2022) ................................................................. 11, 12, 13, 14

*Yorlum Properties v. Lincoln Cnty.*,
    311 P.3d 748 (Mont. 2013) ........................................................................ 23, 24

### Statutes

Mont. Code Ann. § 70–1–508 ..................................................................... 6, 11, 15
Mont. Code Ann. § 70–1–510 ...............................................................................17
Mont. Code Ann. § 70–1–511 ..................................................................... 6, 15, 16
Mont. Code Ann. § 70–17–104 ...................................................................... 12, 18
Mont. Code Ann. § 70–20–115 .............................................................................15

## Introduction

Contrary to Watterworth's fundamental premise, there is no evidence in the record that the Sagebrush to Reiber/Knight warranty deed conveyed anything before it was recorded in 2007. Instead, Montana law expressly contemplates that a warranty deed can be held in escrow pending the satisfaction of a contingent event, such as "payment in full of the purchase price," as the NPI explains here. Under those circumstances, the deed held in escrow is not effective upon signing. Instead, it is only effective upon delivery. Mont. Code Ann. §§ 70–1–508 and –511.

The evidence shows that is exactly what happened here. Sagebrush and Reiber/Knight entered into a contract for deed, Sagebrush placed an executed warranty deed in escrow, the parties recorded the NPI—which is an abstract of the contract for deed, and not the warranty deed—and then, years later, Reiber/Knight completed their payment obligations under the contract. Only then was the warranty deed delivered to Reiber/Knight and recorded, and only then did Reiber/Knight obtain title to the property. By then, however, Sagebrush had conveyed away what is now the Sutherlands' property to the Holts and therefore, by the time the Reiber/Knight warranty deed was delivered and recorded, it was too late to have any effect on the Holt/Sutherland property, because a party cannot grant an easement over property they do not own.

Thus, the only way Sagebrush could have reserved an easement across what is now the Sutherlands' property is if Sagebrush reserved an easement when it sold the property to the Holts. But Sagebrush did not do so, and the easement depicted on COS 498388-R—the only COS that was part of that conveyance—does not satisfy the easement-by-reference doctrine. This is because the easement is not "adequately described" since none of Watterworth's properties are legally described on COS 498388-R. That is fatal to Watterworth's easement-by-reference claim.

### Additional Facts

Nothing in Watterworth's brief alters the relevant analysis under Sutherlands' motion for judgment on the pleadings, and the Sutherlands therefore incorporate those arguments here. Further, it appears the parties agree on most of the relevant material facts, except for dispositive facts surrounding the timing of the delivery of the Reiber/Knight warranty deed—a problem that Watterworth simply ignores. But there are two areas that nevertheless provide additional context.

First, the Sutherlands did not have actual notice that anyone asserted an easement across the length of Mine Road when they purchased their property. (Statement of Disputed Fact ("SDF") at ¶¶ 38–42.) To be sure, they were aware that a neighbor to the east, LMWC LLC, has an easement that shares the Sutherlands' driveway for a short distance before heading west, off the

Sutherlands' property. (SDF at ¶35.) The Sutherlands were also aware of the certificates of survey that both parties have discussed at length, along with the note in their title commitment and policy. But when the Sutherlands followed up with the listing agent, title company, and their predecessor, they were told there was no additional documentation related to the certificates of survey, and nobody told them anyone claimed a right to an easement for the full length of Mine Road. (SDF¶¶37–42.)

Second, Mine Road does not provide any reasonable access to anything but the tiniest corner of Watterworth's property. (SDF¶44.) After leaving the Sutherlands' property, Mine Road briefly crosses over a corner of Watterworth's property, all while in a steep and precipitous canyon flanked by a steep ridge to the west. (SDF¶45.) It then enters the property of a non-party before crossing into State-owned property in Missoula County. Between Watterworth's property and the county line, there is a primitive road that climbs out of the canyon and re-enters Watterworth's property. (SDF¶46.)

That "road," however, is steep, exposed, dangerous, and impassable to regular vehicular traffic. It is also overgrown and not regularly used by anyone. (SDF¶47.) Watterworth does not currently—and apparently has never—used that road for regular access to his property. Instead, Watterworth uses White Cloud Road, which leaves Eight Mile Creek Road west of Mine Road. White Cloud Road

is well developed and passable year-round by any sort of passenger vehicle, and it is entirely on Watterworth's property. (SDF¶48.) Thus, a ruling that Watterworth has no easement on Mine Road will have no practical effect on Watterworth's access or the value of his property.

As for the material facts, there are only three that matter: 1) in April of 2002, Sagebrush and Reiber/Knight entered into a contract for deed and recorded the NPI and placed the warranty deed in escrow; 2) a few months later, Sagebrush sold what is now the Sutherlands' property to the Holts; and 3) Reiber/Knight did not record, and presumably did not receive, their warranty deed until 2007.

### A. In April 2002 Sagebrush entered into a contract for deed with Reiber/Knight, the parties recorded the NPI to reflect that contract, and then placed the executed warranty deed in escrow.

In early 2002, Sagebrush Investments LLP owned all of what is now the Sutherland and Watterworth properties. (Doc. 18 at ¶ 5.) In April of that year, Sagebrush and Reiber/Knight entered into a contract for deed for what is now Watterworth's property. (Doc. 18 at ¶ 9.) They then recorded the NPI, which explains that the parties had "entered into a written agreement for sale…of the following real property… [described in] Exhibit 'A' attached hereto" and that the "agreement requires periodic payments to be made to Seller in amortization of the balance due on the purchase price, *and upon payment in full of the purchase price, Seller is required to deliver the appropriate deed to Buyers*." (*Id.*; Doc. 1-1 (emphasis added).)

At the same time, Sagebrush executed the "appropriate" deed—the warranty deed—that would eventually convey the same property to Reiber/Knight if the conditions of the contract for deed were satisfied. (Doc. 18 at ¶ 11.) There is no evidence in the record that the warranty deed was "delivered" to Reiber/Knight prior to the time it was eventually recorded five years later, in 2007.

**B.      In August of 2002, Sagebrush quitclaims what is now the Sutherland property to the Holts, and that deed is recorded in October of 2002.**

Less than three-and-a-half months after Sagebrush and Reiber/Knight executed the NPI and placed the Reiber/Knight warranty deed in escrow, Sagebrush conveyed what is now the Sutherlands' property to the Holts. (Doc. 18 at ¶ 20; Doc. 1-2.) The Sagebrush to Holt quitclaim deed was executed on August 1, 2002, and recorded on October 10, 2002. (*Id.*) That deed does not have any language expressly reserving an easement. It simply refers to COS 498388-R.

**C.      The Reiber/Knight warranty deed is not recorded until 2007, long after Sagebrush had lost the ability to grant an easement in what is now the Sutherlands' property.**

The Reiber/Knight warranty deed was not recorded until 2007. (Doc. 18 at ¶ 25.) More importantly, there is no evidence in the record that the warranty deed was *delivered* to Reiber/Knight before that time, let alone before October of 2002, when Sagebrush quitclaimed what is now the Sutherlands' property to the Holts. Watterworth's brief—and the evidentiary record he has submitted—are silent on this point.

**Argument**

Watterworth's argument attempts to create a sort of one-size-fits-all legal smoothie, which mixes portions of various easement doctrines together in an attempt to create an easement where none exists. That smoothie combines a dash of easement by reservation, a scoop of easement by reference, and a splash of easement via "subject to" language. But the concepts are not interchangeable and therefore, while Watterworth's argument has hints of several disparate easement doctrines, it ultimately satisfies none of them.

I. **The Reiber/Knight NPI was incapable of granting an easement because it was not a conveyance, and the associated warranty deed was incapable of granting an easement because it was not effective until after Sagebrush had lost the ability to grant an easement over what is now the Sutherlands' property.**

Watterworth's argument that Sagebrush granted an easement to Reiber/Knight via the NPI or the escrowed warranty deed is incorrect for three reasons. First, and as discussed at length in the Sutherlands motion for judgment on the pleadings, an NPI, which only contemplates a potential future conveyance, is not a present conveyance and therefore cannot create an easement. *Towsley v. Stanzak*, 519 P.3d 817, 823 (Mont. 2022). And the NPI here, just like the NPI in *Towsley*, contains no language of conveyance.

Second, even though the Reiber/Knight warranty deed was executed in 2002, the NPI explains that the warranty deed would not be immediately "delivered." Instead, it was held in escrow, presumably until 2007 when it was

recorded, and was therefore ineffective for any purpose until that time, because a grant of property as contained in a deed is only effective on delivery. Mont. Code Ann. § 70–1–508.

Third, by the time the warranty deed was delivered to Reiber/Knight and recorded, Sagebrush was legally incapable of granting an easement over what is now the Sutherlands' property because Sagebrush no longer owned that property, and an easement "can be created only by one who has a vested estate in the servient tenement." Mont. Code Ann. § 70–17–104. At this point, the recording statutes become important. Even if one were to reach the evidence-free conclusion that the warranty deed was delivered to Reiber/Knight contemporaneously with the NPI and they therefore took full legal title at that time, Reiber/Knight's failure to record the warranty deed before the Sagebrush to Holt conveyance means that the Holts took title without being bound by any alleged easement purportedly created in the Sagebrush to Reiber/Knight conveyance.

## A.  Watterworth's argument that the NPI created the easement is foreclosed by the plain language of the NPI and by *Towsley* because the NPI contains no language of conveyance.

The NPI is not an abstract of the warranty deed; it is an abstract of the contract for deed. Indeed, the plain language of the NPI explains that the parties had entered into an agreement for the sale of the property, that the agreement requires periodic payments to be made, and that upon full payment, the seller is required to deliver the appropriate deed to the buyers. It goes on to explain that the

"undersigned shall provide a full and complete copy of said agreement without cost upon request." The "said agreement" is not the warranty deed—it is the contract for deed. Here is the entire substance of that document, with "said agreement" referring to the "written agreement for sale" of the property, rather than the warranty deed:



Fundamentally, the NPI simply contains no language of conveyance. *Towsley* explained that even though the NPI in that case "referenced" the claimed easement, it did not constitute an instrument of conveyance, because nothing in the NPI created, granted, assigned, surrendered, or declared a property interest. *Towsley*, ¶ 16. Here, just like in *Towsley*, the NPI contains no language of

conveyance.

Despite Watterworth's argument that Exhibit A to the NPI includes language that might have been sufficient to establish an easement *as part of a warranty deed and its language of conveyance*, Exhibit A does not purport to convey anything. Rather, the language of conveyance required by *Towsley* is included only in the warranty deed itself:

> **WARRANTY DEED**
>
> THIS INDENTURE, made the _19th_ day of April, 2002, between Sagebrush Investments, LLP of Drawer 9, Lolo, Montana, 59847 the party of the first part and Kenneth Reiber and Susan ⟶ _J. KNIGHT_, of PO BOX 997 , _FLORENCE, MT._, , _59833_ the parties of the second part.
>
> **W I T N E S E T H :**
>
> That the said party of the first part, for and in consideration of the sum of Ten and No/100 Dollars ($10.00), plus other valuable consideration, to it in hand paid by the said parties of the second part, receipt of which is hereby acknowledged, do by these presents grant, bargain, sell, convey, warrant and confirm unto the said parties of the second part, and to its assigns forever, the hereinafter described real estate situated in the County of Ravalli AND IN THE County of Missoula and the State of Montana, to wit;
>
> **See Attached Exhibit "A"**

There is no similar language or any other language of conveyance in the NPI.[1] But that makes perfect sense, because the NPI was not intended to convey anything. Moreover, Montana law expressly contemplates that a "purchaser under a contract for deed" may record the contract "or an abstract of the contract," and if

---

[1] Again, Sutherland does not dispute that the "together with" language in Exhibit A would have been sufficient to grant an easement to Reiber/Knight if the warranty deed and Exhibit A were recorded at the time the NPI was recorded, or at any time when Sagebrush still owned what is now the Sutherlands' property. But it wasn't.

they do, the purchaser under the contract is entitled to any statutorily required legal notice that must be provided to the owner. Mont. Code Ann. § 70–20–115. That is exactly what happened here, and the parties recorded the NPI, which is an abstract of the contract for deed, and not the warranty deed.

> **B.      The warranty deed did nothing in 2002 because the NPI explains that it would be held in escrow and not delivered until the conditions of the contract were satisfied, which the evidence suggests did not happen until 2007.**

Montana property law provides that deeds are not effective until delivery, and that executed deeds can be held in escrow only to be delivered upon the satisfaction of specific conditions. Mont. Code Ann. §§ 70–1–508 and –511. That is exactly what happened here.

The reason is simple and explained in the NPI: Sagebrush and Reiber/Knight entered into a contract for deed which required periodic payments to be made. But Sagebrush—or more likely, an escrow agent—was not required to "deliver" the warranty deed until the conditions of the contract had been performed. There is no evidence that the conditions were performed or that Reiber/Knight made the "payment in full" until 2007, when the warranty deed was recorded.

The fact that the deed was in escrow is dispositive that the property was *not* conveyed to Reiber/Knight at that time, because a "grant takes effect so as to vest the interest intended to be transferred only upon its delivery by the grantor." Mont. Code Ann. § 70–1–508. Montana property law specifically contemplates that deeds

can be executed and held in escrow, only to be delivered later: "A grant may be deposited by the grantor with a third person, to be delivered on performance of a condition, and on delivery by the depositary, it will take effect. While in the possession of the third person and subject to condition, it is called an escrow." Mont. Code Ann. § 70–1–511.

These laws have been codified since at least 1895, and the Montana Supreme Court has cited their identically worded predecessors for the rule that "[a]ll of the multitude of f cases in which this question has been considered agree that there must be a delivery of a deed in order to vest title." *Carnahan v. Gupton*, 96 P.2d 513, 515 (Mont. 1939). Where an instrument has been executed and placed in escrow, "it does not become a deed, and no legal title or estate passes until the condition has been performed or the event has happened upon which it is to be delivered to the grantee or until the delivery by the depositary to the grantee." *Hart v. Barron*, 204 P.2d 797, 808 (Mont. 1949). Therefore, "[r]egardless of the date of execution, the effective date of the transfer of title by deed in escrow is the date of delivery by the depository." *Silfvast v. Asplund*, 20 P.2d 631, 635–36 (Mont. 1933).

Watterworth's argument that "as of April 19, 2002. Sagebrush conveyed the now-Watterworth property"[2] via warranty deed to Reiber/Knight is simply not

---

[2] Doc. 17 at 31.

supported by the evidence. Rather, it is contrary to the evidence. It also makes no sense, because the NPI explains that once the deed was delivered, it would mean the condition precedent to its delivery was satisfied. That, on the other hand, makes sense, because a grant cannot be delivered conditionally. Mont. Code Ann. § 70–1–510. Instead, delivery to a grantee is deemed to be absolute, the instrument takes effect on delivery, and any prior conditions are discharged at the time of delivery. *Id.*; *Romain v. Earl Schwartz Co.*, 779 P.2d 54, 55–56 (Mont. 1989). That means that whenever Sagebrush ultimately delivered the warranty deed to Reiber/Knight, Reiber/Knight's payment obligations were necessarily complete.

In sum, to conclude as Watterworth argues that Sagebrush "conveyed" the property to Reiber/Knight in 2002, would require the Court to (a) ignore the plain language of the NPI; (b) assume, without evidence, that Reiber/Knight immediately made all of the payments due under the contract for deed; or (c) assume, again without evidence, that Sagebrush chose to deliver the warranty deed to Reiber/Knight, thereby waiving its right to collect any future payments on the contract. Any one of these evidence-free assumptions would then require the additional assumption that Reiber/Knight inexplicably waited some five years to record the now-delivered warranty deed. But none of these assumptions make any sense, and the more reasonable and evidence-backed assumption is the most likely: Reiber/Knight did not pay the full purchase price until 2007, and therefore the

escrow agent did not "deliver" the warranty deed until that time.

Of course, at the summary judgment stage, all reasonable inferences drawn from the underlying facts must be viewed in a light most favorable to the non-moving party. *Airlines for Am. v. City & Cnty. of San Francisco*, 78 F.4th 1146, 1152 (9th Cir. 2023). Here, there is simply no evidence that the warranty deed was delivered to Reiber/Knight before it was recorded, and it would require an incredible set of circumstances for it to be delivered before Sagebrush conveyed away what is now the Sutherland property to the Holts in August of 2002, less than four months after Reiber/Knight entered into the contract for deed with Sagebrush.

**C.** **By the time the warranty deed conveyed the property to Reiber/Knight, Sagebrush had long since conveyed away what is now the Sutherlands' property and therefore Sagebrush had no ability to grant an easement over the Sutherlands' property.**

By 2007, when the Sagebrush to Reiber/Knight warranty deed became effective upon its delivery, the easement language in the warranty deed was legally incapable of granting an easement over what is now the Sutherlands' property because Sagebrush no longer owned it, and an easement "can be created only by one who has a vested estate in the servient tenement." Mont. Code Ann. § 70–17–104.

The reason for this rule is so obvious as to nearly defy citation, but suffice to say, "a person can convey no more or greater title than he holds." *Leichtfuss v. Dabney*, 122 P.3d 1220, 1230 (Mont. 2005). Here, Sagebrush had long since

conveyed away to the Holts what is now the Sutherlands' property by the time Sagebrush delivered the warranty deed to Reiber/Knight, and therefore whatever promises about an easement over the Sutherlands' property might have been contained in that warranty deed were, by then, a legal nullity.

Finally, even if Watterworth could somehow prove that the warranty deed was delivered to Reiber/Knight in 2002, it would not help them because the deed was not recorded until 2007. As Watterworth correctly notes, the rule in Montana is that "a prospective purchaser is on constructive notice of *recorded* servitudes and encumbrances granted by the existing and prior owners of the parcel in question during the respective periods when each owner held title to the parcel." *Earl v. Pavex, Corp.*, 313 P.3d 154, 166 (Mont. 2013) (emphasis added). Here, however, the NPI was not a conveyance and the Reiber/Knight warranty deed was not recorded until long after Sagebrush had sold what is now the Sutherlands' property. Watterworth's constructive notice argument therefore fails under the plain language of *Pavex* because Sagebrush did not grant any recorded easement over the Sutherlands' property during the time period that Sagebrush owned that property.

**II.  The quitclaim deed from Sagebrush to the Holts does not satisfy the easement-by-reference doctrine because the identities of the dominant parcels and the easement's use and necessity are not adequately described on the referenced COS 498388-R.**

Watterworth's argument misapplies the fundamental holdings of *Blazer*, where the Montana Supreme Court explained that that the easement-by-reference doctrine's requirement that the easement must be "adequately described" will never be met if the alleged easement (a) purports to benefit an "off-survey" property—like all of Watterworth's Missoula County property and some of his Ravalli County property; or (b) purports to benefit properties that can only be discovered by agglomerating parol evidence to determine the allegedly benefitted property—like the rest of Watterworth's Ravalli County property. *Blazer v. Wall*, 183 P.3d 84, ¶¶ 53–54, ¶ 75 (Mont. 2008).

Watterworth's argument violates both principles. First, Watterworth makes no serious argument that his Missoula County property—which is not shown on any certificate of survey in the record—can possibly benefit from an easement when Mine Road is shown leaving the survey headed *away* from that property. On this issue, *Blazer* laid down the categorical rule that an off-survey property cannot be a dominant tenement under the easement-by-reference doctrine. *Blazer*, ¶¶ 53–54.

Second, Watterworth's insistence that his Ravalli County is adequately described because one might be able to figure out it benefits from the alleged

easement *by looking at three separate certificates of survey at the same time* gives away the game. By making this argument, Watterworth concedes that looking at COS 498388-R is not enough to satisfy the doctrine because the purportedly dominant tenements are not even legally described on that COS—and he is correct on that point.

*Blazer* leaves no room for doubt that, to reserve an easement by depicting it on the specific certificate of survey referenced in the deed, the "grantor's intent to reserve or grant an easement for the benefit of particular property must be clearly and unmistakably communicated and not left to inference, implication, or extrinsic evidence." *Blazer*, ¶ 56. Put another way, "an individual looking at *that* plat or certificate of survey must be able to ascertain, with reasonable certainty, the depicted easement's use or necessity and the intended dominant and servient tenements." *Blazer,* ¶ 75 (emphasis added).

Since *Blazer*, the Montana Supreme Court has reaffirmed the same rule in various contexts. For example, in *Bos Terra, LP v. Beers*, 354 P.3d 572 (Mont. 2015), the parties disputed whether an easement was appurtenant and ran with the land, or whether it was "in gross" and personal to an individual. The Court concluded that the easement was *not* appurtenant because the transactional documents did not identify the dominant tenement, and when "the identity of the dominant tenement has been omitted and cannot be ascertained from the

documents of conveyance, an easement appurtenant has not been 'adequately described.'" *Bos Terra*, ¶¶ 13–14. Thus, if the intended dominant estates "are only ascertainable by resort to parol evidence," the easement cannot be adequately described for purposes of the easement-by-reference doctrine. *Id.*

Watterworth attempts to evade these problems by pointing to two cases that Watterworth alleges stand for the rule that "when a deed references a certificate of survey, the referenced certificate of survey, including all notations, certifications, lines, descriptions, marks, and depictions are incorporated into the deed."[3] This is incorrect, because neither of the cases cited by Watterworth have anything to do with the easement-by-reference doctrine. Instead, both cases are boundary line disputes involving riparian boundaries and meander lines. In fact, one—*Ash v. Merlette*, 407 P.3d 304 (Mont. 2017)—only references an "easement" in the context of the public trust doctrine. And the other—*John Alexander Ethen Trust v. River Res. Outfitters,* 256 P.3d 913 (Mont. 2011)—doesn't have a single reference to any type of easement.

Next, Watterworth includes dueling images lifted from Sutherlands' earlier briefing in support of his idea that the easement depicted on COS 498388-R adequately describes the dominant tenement.[4] But seeing the relevant COS here

---

[3] Doc. 17 at 26.
[4] Doc. 17 at

next to the COS from *Yorlum* does not help Watterworth, because unlike COS

498388-R, the COS from *Yorlum* specifically describes two parcels—the dominant

Lot 5-B and the servient Lot 5-A-1—and shows a "30' Private Easement" running

from a cul-de-sac at the bottom of Lot 5-A-1 all the way across it to the boundary

of Lot 5-B.



*Yorlum* concluded that this COS "imparts sufficient information for an

individual to ascertain, with reasonable certainty, the dominant tenement (Lot 5–

B), the servient tenement (Lot 5–A–l), the easement's approximate course across

Lot 5–A–l, and the easement's use or necessity (to provide a means of private

access to Lot 5–B).” *Yorlum Properties v. Lincoln Cnty.*, 311 P.3d 748, 757–58 (Mont. 2013).

In contrast, COS 498388-R does not even show Watterworth's entire Ravalli County property. More importantly, it does not legally describe any of Watterworth's property, and therefore nobody looking at it can determine, with the required level of “reasonable certainty,” the identity of the dominant and servient parcels, or the easement's use or necessity.

The other certificates of survey are simply not relevant, because they were not part of the Sagebrush to Holt conveyance, and it is “axiomatic” that an easement has not been adequately described when the identity of the dominant tenement cannot be ascertained from the documents of conveyance. *Blazer*, ¶ 51. Thus, if “a referenced plat or certificate of survey is the *only* document providing the description of a purported easement—as was the case in *Blazer*—then obviously that plat or certificate of survey must stand on its own.” *Davis v. Hall*, 280 P.3d 261, 269 (Mont. 2012)[5] (emphasis in original).

Here, the entirety of Watterworth's argument violates this rule because that argument requires looking to extrinsic evidence, which is categorically prohibited

---

[5] Davis reaffirmed *Blazer*'s rule that extrinsic evidence could not be used in an easement-by-reference case but nevertheless concluded an easement existed because there was a separate Declaration of Easements expressly reserving an easement to the property in question. *Id.*

by *Blazer*. Purchasers like the Holts are simply not required to investigate the "context" of each conveyance within their chain of title, because that would "virtually destroy the utility of the real estate recording system." *Broadwater Development v. Nelson*, 219 P.3d 492, 501 (Mont. 2009). Watterworth therefore cannot have an easement by virtue of the easement-by-reference doctrine.

## III.   "Subject to" language in a deed is *never* sufficient to create an easement.

Watterworth's next argument is apparently that Watterworth has an easement due to language in the Sutherlands' deed from Vanek, which states that the Sutherlands' property is "subject to" easements of record. This argument is also incorrect, and Watterworth's substitution of case-specific facts within quotations from the Montana Supreme Court is nothing short of bizarre.[6]

That aside, the Montana Supreme Court has long held that "subject to" language in a deed does not create an easement. *Blazer*, ¶ 28 (collecting cases). Indeed, the relevant deed in *Blazer* contained a description of the conveyed property—Tract 1 of COS 4446—which was immediately "followed by the clause, 'SUBJECT TO 30 foot road easement as shown on Certificate of Survey No. 4446.'" *Blazer*, ¶ 28. That is identical to the language Watterworth relies on here, but *Blazer* held that the quoted language did not "create or reserve easement rights" for the seller or his successors. *Id.* For the same reason, the Court should

---

[6] *E.g.*, Doc. 17 at 25.

reject Watterworth's "subject to" argument here.

## Conclusion

The Court should deny Watterworth's motion for summary judgment, grant Sutherlands' motion for judgment on the pleadings, and issue a declaratory judgment that Watterworth does not have any express easement over the Sutherlands' property.

April 16, 2024.

PARSONS BEHLE & LATIMER
*Attorneys for the Sutherlands*

/s/ Jesse Kodadek
Jesse Kodadek

**Certificates of Compliance and Service**

Pursuant to Local Rule 7.1(d)(2)(E), I certify that this brief has 4756 words as calculated by Microsoft Word, excluding the caption, certificate of compliance, and certificate of service, but including additional words in screenshots.

I certify that all parties entitled to service of this document are registered with the Court's CM/ECF system and will be served upon filing.

/s/ Jesse Kodadek