IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| HUGH SUTHERLAND AND KIM D. SUTHERLAND,<br><br>                    Plaintiffs,<br><br>        vs.<br><br>PAUL J. WATTERWORTH, AS TRUSTEE OF THE PAUL J. WATTERWORTH REVOCABLE TRUST,<br><br>                    Defendant. | CV 23–130–M–DLC<br><br><br>ORDER |

Before the Court are Plaintiffs Hugh and Kim. D. Sutherlands' (the "Sutherlands") motion for judgment on the pleadings (Doc. 6), Defendant Paul J. Watterworth's, as Trustee of the Paul J. Watterworth Revocable Trust ("Watterworth"), motion for summary judgment (Doc. 16), and Watterworth's motion for judicial notice (Doc. 21). The Court held oral argument on October 31, 2024. For the reasons herein, the Sutherlands' motion is denied, and Watterworth's motions are granted.

## Background[1]

This case arises out of a property dispute between two neighbors, the Sutherlands and Watterworth, regarding the existence or nonexistence of an easement over the Sutherlands' property on Mine Road. Both Watterworth and the Sutherland's properties were once under the common ownership of Sagebrush Investments LLP ("Sagebrush"), who owned, and continue to own, several parcels of land near the border of Ravalli and Missoula Counties, Montana. (Doc. 18 ¶ 5.) Sagebrush prepared three certificates of survey ("COS") as it divided its property into different tracts: (1) COS 484308-R, recorded on September 4, 2001; (2) COS 496440-R, recorded on May 28, 2002; and (3) COS 498388, recorded on July 2, 2002. (Doc. 18 ¶¶ 7, 14, 16.)

On April 19, 2002, Sagebrush entered into a contract for deed with Kenneth Reiber and Susan Knight ("Reiber/Knight") for the sale of Tract 1 of COS 496440-R, located in Ravalli and Missoula Counties, Montana, and described on Exhibit A to a Notice of Purchaser's Interest ("NPI"). (*Id.* ¶ 9.)

Attached to both the Reiber/Knight NPI and Warranty Deed was an exhibit ("Exhibit A") entitled: "<u>EXHIBIT A</u> LEGAL DESCRIPTION." Beneath that title, Exhibit A stated, in relevant part:

---

[1] Pursuant to Federal Rule of Civil Procedure 56, the following facts are undisputed as per the parties' Statements of Undisputed and Disputed Facts. (Docs. 18, 26.)

A parcel of land located in and being a portion of the N ½ Section 1 and N ½ Section 2, Township 10 North, Range 19 West, P.M.M., Ravalli County, Montana, shown as Tract One, Certificate of Survey No. 496440-R.

The SW ¼ Section 36, Township 11 North, Range 19 West, P.M.M Missoula, County, Montana.

….

ALSO TOGETHER WITH a 60 foot wide road and utility easement extending Northerly from 8 Mile Road, through the W ½ of Section 1, along "Mine Road", to the Southeasterly portion of the property herein.

…

Reserving with the sellers, their successors and assigns, the following easement:

A 60 foot wide road and utility easement through the Southeasterly corner of the property in Section 1, known as the "Mine Road", to provide access to property retained by Seller in said Section 1.

(*Id.* ¶ 10.) The W ½ Section 1 includes the now-Sutherlands property, a portion of the now-Watterworth property, and a portion of Mine Road. (*Id.*) The Reiber/Knight NPI and associated Warranty Deed contemplated the future sale of over 400 acres to Reiber/Knight. The Reiber/Knight NPI and COS 496440-R were recorded in Ravalli County on May 28, 2002, and in Missoula County on May 31, 2022. (*Id.* ¶ 9.) The escrowed Reiber/Knight Warranty Deed, however, was not recorded with Ravalli County until April 6, 2007, and not with Missoula County

until May 31, 2007. (*Id.* ¶ 11.) This property now belongs to Watterworth. (*Id.* ¶ 26.)

On August 2, 2002, Sagebrush conveyed via quitclaim deed Tract 2 of COS 498388-R to William and Ramona Holt. (*Id.* ¶ 20.) The Holt deed was recorded on October 10, 2002, in Ravalli County. (*Id.*) Exhibit A Holt quitclaim deed provided that the real property was conveyed "SUBJECT TO roadways and utility easement as shown on Certificate of Survey No. 498388-R" and "SUBJECT TO any … easements … of record or apparent on the premises." (*Id.* ¶ 20.) Tract 2, COS 498388-R, was ultimately conveyed to the Sutherlands on February 16, 2021, via warranty deed from Ginger Vanek. (*Id.* ¶¶ 21, 23.) The Sutherlands' warranty deed contains a similar legal description as that contained in the Holt quitclaim deed, providing that the property is conveyed "SUBJECT TO Covenants, Conditions, Restrictions, Provisions, Easements and encumbrances apparent or of record." (*Id.* ¶ 23.)

In addition to the properties described above, Sagebrush also owned Tract 3, COS 484308-R, which was recorded with the Ravalli County Clerk and Recorder on September 4, 2002. (*Id.* ¶¶ 6–7.) All three CSO's—496440-R, 498388-R, and 484308-R—identified a "60' Private Access and Utility Easement" (the "Mine Road easement"), extending northerly from the intersection of Mine Road and 8 Mile Road, northeasterly through the now-Sutherlands' property, northeasterly

through the southeastern portion of the now-Watterworth Ravalli County Property, northeasterly through Sagebrush's Tract 3, and to the Ravalli-Missoula County boundary. (*Id.* ¶¶ 8, 15, 17.)

On September 26, 2023, the Sutherlands filed a Complaint seeking a declaratory judgment that Watterworth does not have an easement on Mine Road. (Doc. 1 at 10.) Watterworth filed his Answer on December 26, 2023, and asserted four counterclaims. (Doc. 3.) Counterclaim Count I seeks a declaratory judgment that the Reiber/Knight NPI and Warranty Deed created an interest in the Mine Road easement on April 19, 2002, and that the Mine Road easement now burdens the Sutherlands' property to the benefit of Watterworth's. (*Id.* ¶¶ 30–31.) Count II seeks a declaratory judgment that the Sagebrush to Holt quitclaim deed was conveyed subject to the Mine Road easement, and that the Sutherlands' property is burdened by, and the Watterworth property is benefitted by, the easement. (*Id.* ¶ 37.) In the alternative, Count III and Count IV seek a declaratory judgment that an easement over the Sutherlands' property exists under the doctrine of easement by preexisting use or prescription, respectively. (*Id.* ¶¶ 41, 43.) On December 26, 2023, the Sutherlands answered Watterworth's counterclaims and asserted several affirmative defenses. (Doc. 3 at 16.) The Sutherlands did not brief any of these affirmative defenses in their motions practice.

On February 12, 2024, the Sutherlands filed a motion for judgment on the pleadings, seeking judgment in the Sutherlands' favor on the sole count of their Complaint, and against Watterworth by dismissing Counterclaims I and II. (Doc. 6 at 2.) On March 12, 2024, Watterworth filed a motion for summary judgment, requesting that this Court instead enter judgment in its favor as to the sole count in Sutherlands' Complaint, Counterclaims I and II, and Sutherlands' affirmative defenses. (Doc. 16 at 1.) Watterworth also filed a motion for judicial notice, requesting that this Court take judicial notice of several documents in relation to his motion for summary judgment. (Doc. 21.)

LEGAL STANDARDS

## I.      Judgment on the Pleadings

Federal Rule of Civil Procedure 12(c) provides that, "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Like a motion for dismissal under Rule 12(b)(6), a Rule 12(c) motion examines whether the factual allegations of the complaint, together with all reasonable inferences, state a plausible claim for relief. *Cafasso v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047, 1054–55 (9th Cir. 2011). In analyzing a Rule 12(c) motion, the court "must accept all factual allegations in the complaint as true and construe them in the light most favorable to the non-moving party." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). A court "need not

assume the truth of legal conclusions cast in the form of factual allegations."
*United States ex rel. Chunie v. Ringrose (Chunie)*, 788 F.3d 676, 681 (9th Cir.
2010). "A judgment on the pleadings is properly granted when, taking all the
allegations in the non-moving party's pleadings as true, the moving party is
entitled to judgment as a matter of law." *Ventress v. Japan Airlines*, 603 F.3d 676,
681 (9th Cir. 2010).

However, if the court "goes beyond the pleadings to resolve an issue," a
judgment on the pleadings is not appropriate and "such a proceedings must
properly be treated as a motion for summary judgment." *Hal Roach Studios, Inc. v.
Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1989); Fed. R. Civ. P. 12(d).

## II.    Summary Judgment

A party is entitled to summary judgment if it can demonstrate that "there is
no genuine dispute as to any material fact and the movant is entitled to judgment as
a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is warranted where the
documentary evidence produced by the parties permits only one conclusion.
*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). Only disputes over
facts that might affect the outcome of the lawsuit will preclude entry of summary
judgment; factual disputes that are irrelevant or unnecessary to the outcome are not
considered. *Id.* at 248. In ruling on a motion for summary judgment, the court must
view the evidence "in the light most favorable to the opposing party." *Tolan v.*

*Cotton*, 572 U.S. 650, 655–56 (2014) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). "[T]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

When faced with cross-motions for summary judgment, "each motion must be considered on its own merits." *Fair Hous. Council of Riverside County, Inc. v. Riverside Two,* 249 F.3d 1132, 1136 (9th Cir. 2001). Under this standard, "each party, as a movant for summary judgment, bears the burden of establishing that no genuine dispute of material fact exists and that the movant is entitled to judgment as a matter of law." *Federal Trade Comm. v. American eVoice, Ltd.*, 242 F. Supp. 1119, 1121 (D. Mont. 2017) (citation omitted). If a genuine dispute of material facts exists, a court must deny both motions. *Id.* But if there is no dispute of material fact and only one party is entitled to judgment as a matter of law, a court may grant summary judgment as to one party only. *Id.*

## DISCUSSION

### I.      Motion for Judicial Notice

Watterworth seeks judicial notice of several documents in support of his motion for summary judgment. (Doc. 21.) Federal Rule of Evidence 201 governs judicial notice of adjudicative facts, permitting courts to take notice of a fact that is not subject to reasonable dispute because it is either generally known within the

court's territorial jurisdiction or can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned. Fed. R. E. 201(a), (b).

Watterworth requests that the Court take judicial notice of the following documents filed in support of his motion: (1) Sutherlands' title commitment issued by First American Title Company; (2) Sutherlands' title policy issued by Old Republic National Title Insurance Company; (3) Warranty Deed, Virginia G. Moose and David M. Grether, Successors of the Grether Family Trust and Sagebrush Investments LLP; (4) a second Warranty Deed, Virginia G. Moose and David M. Grether, Successors of the Grether Family Trust and Sagebrush Investments LLP;  (5) Warranty Deed, Sagebrush Investments, LLP and Kenneth Reiber and Susan Knight; (6) Warranty Deed, dated January 10, 2005, Sagebrush Investments, LLP and Kenneth A. Reiber and Susan J. Knight; and (7) Montana Association of Realtors Property Disclosure Statement, Owner's Property Disclosure Statement Montana Association of Realtors Standard Form, and an Addendum to Owner's Property Disclosure Statement. (Doc. 21 at 3–4.)

The Sutherlands do not object to the portion of Watterworth's motion concerning judicial notice of the Warranty Deeds, and do not take a position on the remainder of the motion. (*Id.* at 3.) Accordingly, the Court will grant Watterworth's motion and will take judicial notice of the aforementioned documents pursuant to Federal Rule of Evidence 201(a), (b).

## II.     Express Easement by Reservation

As a preliminary matter, in consideration of the parties' competing motions, the Court looked to evidence beyond that contained in the pleadings, including the documents referenced by Watterworth's motion for judicial notice. As a result, the Court will construe the Sutherlands' motion for judgment on the pleadings as a motion for summary judgment. *See Hal Roach Studios, Inc.*, 896 F.2d at 1550 ("[J]udgment on the pleadings is improper when the district court goes beyond the pleadings to resolve an issue; such a proceeding must properly be treated as a motion for summary judgment.").

The Sutherlands argue that the Reiber/Knight NPI is not an instrument of conveyance, and that by the time the Reiber/Knight Warranty Deed was executed in 2007, Sagebrush could no longer grant an easement over property that it did not own. (Doc. 27 at 12, 18.) Watterworth counters that upon performance of a contract and "actual" delivery of the deed, legal title relates back to the date of the deed's execution: April 19, 2002. (Doc. 28 at 2.) Therefore, Watterworth argues, Sagebrush can, and did, convey an interest in the Mine Road Easement to Reiber/Knight, Watterworth's predecessors in interest. (*Id.*) In the alternative, Watterworth argues that he has an interest in Mine Road under the doctrine of easement by reference. (Doc. 28 at 9.)

- 10 -

"An easement is a nonpossessory interest in the land, providing the holder a right to use another's property for a specified purpose." *Towsley v. Stanzak*, 519 P.3d 817, 822 (Mont. 2022) (internal quotation and citation omitted). "Easements arise by express grant or reservation in a written instrument of conveyance, written declaration of covenant, operation of law (implication from necessity or prior use), or prescription." *Id.* An express easement requires that the grantor hold title to both the dominant and servient estates, and the severance of those estates be made in "a written instrument of conveyance that is substantively sufficient to convey the severed estate, grant or reserve the intended easement, identify the dominant and servient estates, and indicate the nature and scope of the right reciprocally burdening and benefitting the servient and dominant estates." *Id.* To constitute a valid conveyance, the instrument must "(1) identify the grantor and the grantee, (2) adequately describe what is being conveyed, (3) contain language of conveyance, and (4) be signed." *Id.* (emphasis in original).

### A. Conveyance by the Reiber/Knight NPI and Warranty Deed

#### i.   The Reiber/Knight NPI

The Sutherlands first argue that, under the Montana Supreme Court's decision in *Towsley v. Stanzak*, the Reiber/Knight NPI was insufficient to reserve an easement over Mine Road because it lacked language of conveyance. (Doc. 7 at 12.) The NPI, the Sutherlands contend, was an abstract of the contract for deed,

and not the warranty deed. (Doc. 27 at 15.) Although the Sutherlands are indeed correct in that the Reiber/Knight NPI itself did not convey an interest over Mine Road, their focus on the NPI—and whether it was an abstract of a contract for deed or a warranty deed—is misplaced. Because both parties rely heavily on *Towsley*, a detailed discussion is warranted.

In *Towsley*, the seller recorded a certificate of survey, COS 569, in April 1975, which divided her property between a new parcel 1 and the remaining property. 519 P.3d at 819. COS 569 depicted a "private road easement" connecting parcel 1 to a road on the remaining property. *Id.* Two months later, the seller recorded COS 648, which divided the remaining property into two additional parcels. *Id.* at 820. COS 648 identified an easement for parcel 1 along one of the new parcel's boundaries. *Id.* Then, in 1977, the seller entered into a contract for sale of parcel 1, executed a warranty deed, and recorded an NPI. *Id.* The 1977 NPI stated that the parcel 1 was "[s]ubject to a 30-foot access easement … according to COS 569." *Id.* The contract and warranty deed were placed in escrow pending payment of the purchase price. *Id.* at 821. However, the warranty deed referenced in the 1977 NPI was never delivered nor recorded. *Id.* Instead, in 1979, the buyers recorded a different certificate of survey which—notably—neither depicted nor described the easement. *Id.* Years later, plaintiff sought quiet title to resolve the issue of whether an easement existed over the property.

- 12 -

The issues before the court were (1) whether the 1977 NPI contained the requisite language to constitute an instrument of conveyance that referenced the easement; or alternatively, (2) whether the NPI constituted an abstract of an instrument of conveyance of the easement. *Id.* at 823. As to the first question, *Towsley* observed that "language of conveyance" is "language whereby an interest in real property can be 'created, granted, assigned, surrendered, or declared.'" *Id.* at 823 (citing Mont. Code. Ann. § 70-20-101). However, because an NPI only contemplates a future grant of the property, to be effectuated upon some future performance, the court determined that the NPI did not create a conveyance of property. *Id.* at 823–24.

The court then continued to the second issue—whether the NPI served as an abstract of an instrument of conveyance. In Montana,

> [a]n abstract of a conveyance or encumbrance of real property, which abstract is acknowledged or proved and certified and recorded as prescribed by law, shall have the same effect for all purposes of this part as if the conveyance or encumbrance of real property had been acknowledged or proved and certified and recorded by law.

*Id.* (citing Mont. Code Ann. § 70-21-305). Reasoning that in order to effectuate transfer of real property, "the recorded abstract must be an abstract of an instrument of conveyance," the court found that "a contract for deed—as opposed to a warranty deed—passes title only upon satisfaction of the contract conditions and recording of the deed." *Id*.

- 13 -

It is upon this distinction, the court observed, that the doctrine of merger by deed is premised. *Id.* Under the doctrine of merger by deed, upon performance of the contract and execution of the deed, the contract's provisions merge into the deed and any non-collateral terms are extinguished. *Id.* at 824. "Thus, when a deed has been executed, the purchaser's rights are generally found in the deed covenants, not the executed contract." *Id*. However, because the 1977 warranty deed—which contained the language transferring the easement—was never recorded, the court found there was no actual conveyance of the easement. *Id.*

The Reiber/Knight NPI at issue here contains almost identical language to that in *Towsley.* The Sutherlands are therefore correct in that the Reiber/Knight NPI—by nature of its conditional language—contemplated only a future, and not an immediate, conveyance of an interest in Mine Road. Yet this is where *Towsley's* instruction ends. Unlike *Towsley,* where the relevant warranty deed was never recorded, the escrowed Reiber/Knight Warranty Deed *was* eventually recorded— and the NPI's terms presumably satisfied—in 2007. (Doc. 18 ¶ 11.) The question, therefore, is whether the recordation of the Reiber/Knight Warranty Deed in 2007 conveyed a legally enforceable interest in Mine Road.

### ii. The 2007 Execution of the Reiber/Knight Warranty Deed and the Relation Back Doctrine

The Sutherlands argue that an easement "can be created only by one who has a vested interest in the servient tenement." (Doc. 27 at 18 (quoting Mont. Code

Ann. § 70-17-104).) The Sutherlands assert that where, as here, an instrument has been placed in escrow, "it does not become a deed, and no legal title or estate passes until the conditions have been performed or the event has happened, upon which it is to be delivered to the grantee or until the delivery by the depository to the grantee." (Doc. 16 at 27 (quoting *Hart v. Barron*, 204 P.2d 797, 808 (Mont. 1949)); *see also* Mont. Code Ann. § 70-1-511. The Sutherlands contend that because the Warranty Deed was not recorded until 2007—long after Sagebrush conveyed Tract 2 to the Holts, Sutherlands' predecessors in interest—Sagebrush was "legally incapable" of granting an easement over property it no longer owned. (Doc. 27 at 18). The issue, it appears, is one of timing.

This argument, Watterworth avers, fails to consider that real property in Montana has both legal and equitable title, and that while the purchaser retains equitable title to the property, *Hannah v. Martinson*, 758 P.2d 276, 278 (Mont. 1998), legal title remains vested in the seller until performance of the contract, *Stiles v. Mont. Seventeenth Judicial District Court*, 286 P.3d 247 (Mont. 2012). Relatedly, pursuant to the doctrine of equitable conversion, a contract for the sale of real property converts a seller's interest to an owner of personalty as opposed to an owner of real property. *Estate of Wooten*, 643 P.2d 1196, 1199 (Mont. 1982). Any subsequent transfer of legal title, however, does not exclude the prior equitable title. *Hannah*, 758 P.2d at 278. More importantly, Watterworth

- 15 -

emphasizes, is that upon performance of the contract and delivery of the deed, legal "title relates back to the date of the execution of the contract." *Calvin v. Custer County*, 107 P.2d 134, 137 (Mont. 1940); *see also American Waterworks & Electric Co. v. Towle*, 245 F. 706, 709–10 (9th Cir. 1917) (upon final payment and actual delivery of deed to purchaser, legal title relates back to date deed was executed).

The Court finds this line of reasoning convincing; indeed, the Sutherlands fail to provide any argument or authority in opposition. When Sagebrush executed the Reiber/Knight NPI and Warranty Deed in 2002, it owned and retained legal title to what is now the Watterworth and Sutherland properties. Then, when Reiber/Knight recorded the Warranty Deed in 2007—presumably after satisfying the conditions of the NPI— title related back to the date upon which the Warranty Deed was executed: April 19, 2002. Consequently, Sagebrush could—and did— convey an interest in Mine Road to Reiber/Knight on April 19, 2002. This doctrine makes practical sense, and "rests upon the familiar principle that equity regards that as done which is agreed to be done." *Calvin*, 107 P.2d at 136. Whether the Reiber/Knight NPI was an abstract of a contract for deed, or an abstract of a warranty deed, is therefore immaterial.[2]

---

[2] Watterworth initially argued that the Reiber/Knight NPI was an abstract of the Reiber/Knight Deed (*See* Doc. 17 at 14.) In Reply and in oral argument, however, Watterworth abandons this argument and instead maintains that it is immaterial whether the NPI is an abstract of a contract for deed or an abstract of a warranty deed. (*See* Doc. 28 at 8.)

The Court's conclusion is bolstered by a brief foray into California statutory analysis. Montana Code Annotated § 70-1-512, provides, in relevant part, that a deed is constructively delivered "[w]here it is delivered to a stranger for the benefit of the grantee, and his assent is shown, or may be presumed." Mont. Code Ann. § 70-1-512. This statute is—as far as this Court can ascertain—largely unexamined by the Montana Supreme Court. However, the statute mirrors the language in Cal. Code § 1059, which does provide some persuasive instruction. *See* Mont. Code Ann. § 70-1-512(2); Cal. Civ. Code § 1059. In *Miller & Lux v. Sparkman*, the District Court of Appeasl in California observed that when a deed placed in escrow pursuant to Cal Civ. Code § 1059, that deed is deemed delivered after satisfaction of the relevant conditions, after which title relates back to the date of the deed's execution "and the rights of the parties are the same as if the deeds had been delivered on such date." 128 Cal. App. 449, 455 (Cal. App. 3rd Dist. 1932). Here, as in *Miller*, the Warranty Deed was constructively delivered upon its initial placement in escrow, and, and upon its recordation 2007—presumably due to the contract's terms being satisfied—title related back to 2002, the original date of execution.

Furthermore, the Reiber/Knight Warranty Deed contained the necessary language to convey an interest in real property. While a warranty deed immediately transfers an interest in property, a contract for deed is an executory contract for

sale and purchase of a property, which only states the conditions necessary for the transfer of property. *Towsley*, 519 P.3d at 824. Conveyance occurs by way of the warranty deed and not the contract for deed. *Id.* "Thus, when a deed has been executed, the purchaser's rights are generally found in the deed covenants, not the executed contract." *Id.* And, when used in a deed, the words "together with" create an easement. *Mary J. Baker Revocable Trust v. Cenex Harvest States, Coops. Inc.*, 164 P.3d 851, 858 (Mont. 2007).

Here, both the Reiber/Knight NPI and Warranty Deed contained the necessary language to convey an interest in the easement, that being that Watterworth's Missoula and Ravalli County properties were sold "ALSO TOGETHER WITH a 60 foot wide road and utility easement extending Northerly from 8 Mile Road, through the W ½ of Section 1, along 'Mine Road,' to the Southeasterly portion of the property herein." (Doc. 18 ¶¶ 10, 13.) For their part, the Sutherlands concede that "[i]f the warranty deed and Exhibit A were recorded at the time when the NPI was recorded, or at any time when Sagebrush still owned what is now the Sutherlands' property," that would have been sufficient to convey an interest in Mine Road (Doc. 27 at 14, FN 1).[3] Accordingly, the Court finds that

---

[3] The Sutherlands initially argued that the Sagebrush to Holt warranty deed contains insufficient language to convey an easement. (*See* Doc. 7 at 14) (arguing that the "subject to" language is insufficient to create an easement.) However, it is apparent from this concession that they have abandoned this argument.

the Reiber/Knight Warranty Deed created an express easement on the Sutherlands'
property over Mine Road.

### iii.    Constructive Notice

Watterworth further argues that the Sutherlands were on constructive notice
of the Mine Road easement under *Earl v. Pavex,* 313 P.3d 154, 166 (Mont. 2013).
(Doc. 28 at 15.) Also relying on *Earl*, the Sutherlands counter that even if the
Reiber/Knight Warranty Deed was, in fact, delivered in 2002, it nonetheless failed
to put future purchasers on constructive notice until recordation in 2007. (Doc. 27
at 19). The NPI, the Sutherlands maintain, was not a conveyance and thus could
not place a subsequent purchaser on constructive notice. This argument is
misplaced.

A purchaser need not have "actual notice" of an easement; constructive
notice suffices for an easement to be enforced against a subsequent purchaser.
*Earl*, 313 P.3d at 165–66 ("a prospective purchaser is on constructive notice of
recorded servitudes and encumbrances granted by the existing and prior owners of
the parcel in question during the respective periods when each owner held title to
the parcel."). Constructive notice is imputed by the recording statutes, and pursuant
to those statutes, "conveyance … embraces every instrument in writing by which
any estate or interest in real property is created, aliened, mortgaged, or encumbered
or by which the title to real property may be affected, except wills." Mont. Code

Ann. § 70-21-301. Contracts for deed certainly "affect an interest in real property." For example, in *Scott D. Erler, D.D.S. Profit Sharing Plan v. Creative Finance & Investments*, the court examined a series of interests assigned by contracts for deed. 203 P.3d 744 (Mont. 2009). Observing that Montana's recording system "imparts constructive notice to subsequent purchasers that there exists another interest in the property[]", the court found that a buyer was on constructive notice due to a previously-recorded contract for deed for the property. *Id.* at 750, 758.

Therefore, it appears that the Sutherlands take too narrow an approach to constructive notice. Turning to the facts here, it is undisputed that the Sagebrush to Reiber/Knight NPI was recorded in 2002, and COS 484308-R, COS 496440-R, and COS 498388-R, were all recorded between 2001 and 2002. All these documents are within the Sutherlands' chain of title. Had the Sutherlands conducted a title search prior to purchasing the property, they would have discovered Reiber/Knight's recorded interest in Mine Road. Recording statutes are intended to protect purchasers' interests in a right such as an easement, and these documents are more than sufficient to place the Sutherlands on constructive notice of the interest over their property.

Because an express easement by reservation exists over the Sutherlands' property on Mine Road, and the Sutherlands had notice of this easement, the Court

need not delve into Watterworth's alternative argument regarding whether there exists an easement by reference.

**CONCLUSION**

Accordingly, IT IS ORDERED that Watterworth's Motion for Judicial Notice (Doc. 21) is GRANTED.

IT IS FURTHER ORDERED that Watterworth's motion for summary judgment (Doc. 16) is GRANTED. Watterworth has an express easement over the Sutherlands' property on Mine Road. Judgement shall be entered in favor of Watterworth on the Sutherlands' Complaint and Watterworth's Counterclaims I and II.

IT IS FURTHER ORDERED that the Sutherlands' motion for judgment on the pleadings (Doc. 6), construed as a motion for summary judgment, is DENIED.

The Clerk of Court is directed to enter judgment by separate order and to close this case.

DATED this 15th day of November, 2024.

Dana L. Christensen, District Judge
United States District Court